IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| GLG Farms LLC,<br><br>    Plaintiff & Counterclaim Defendant,<br><br>vs.<br><br>Brandt Agricultural Products LTD,<br><br>    Defendant & Counterclaim Plaintiff, | Civil Case No. 4:14-cv-153<br><br>**ORDER GRANTING SUMMARY JUDGMENT OF NON-INFRINGEMENT AND DENYING SUMMARY JUDGMENT OF INFRINGEMENT ON CLAIMS 1 & 5** |

## INTRODUCTION

Defendant/Counterclaim Plaintiff Brandt Agricultural Products, Ltd. ("Brandt") moves for summary judgment of non-infringement[1] and for summary judgment of invalidity.[2] Plaintiff/Counterclaim Defendant GLG Farms LLC ("GLG") opposes Brandt's motions and moves for summary judgment of infringement on Claims 1 and 5 under the doctrine of equivalents.[3] Each party has filed responses and replies to the motions.[4]

The court held a Markman[5] hearing on December 17, 2015. One of the primary disputes pertained to the meaning of the phrase "arranged for mounting on the base wall adjacent the first [or second] side edge of the hopper." The court construed this phrase to mean "arranged for mounting on the base wall on the first [or second] side edge of the hopper between the end walls." In the pending summary judgment motions regarding

---

[1] Doc. #67.

[2] Doc. #124.

[3] Doc. #90.

[4] Docs. #89, #104, #109, #120, #121, #135, and #138.

[5] Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

1

infringement, the court is tasked with comparing the construed claims to the accused's products.

## SUMMARY OF DECISION

The court, having carefully considered the parties' arguments, the applicable case law and the record, hereby grants Brandt's motion for summary judgment of non-infringement, denies GLG's motion for summary judgment of infringement on Claims 1 and 5, and finds as moot Brandt's motion for summary judgment of invalidity. The court finds that GLG has failed to prove that the accused products embody every limitation in the claim, either literally or by a substantial equivalent.

## BACKGROUND

GLG is a developer, manufacturer, and seller of grain auger equipment, including a piece of equipment called the "Auger Jogger". It owns the right, title, and interest in U.S. Patent 7,708,131 ("the '131 Patent"), which is entitled "Swing Auger Hopper Drive." Brandt manufacturers and sells grain auger equipment, including the "HP Swing Away Auger" and the "XL Swing Away Auger". These products are equipped with the "EZSwing Hopper Mover." GLG has alleged in this action that Brandt's products equipped with the EZSwing Hopper Mover infringe on the '131 Patent.

A swing away auger is used by farmers to move grain from a truck to another receptacle, such as a grain bin. It consists of a frame that can lift an auger tube and the auger contained within the tube in order to allow the auger to reach various sized grain bins. The swing away auger has a main auger tube and a "swing away" portion of the auger tube. Before the swing away auger can be used, the hopper must be first moved to the proper location.

Brandt offers its customers different options for moving the hopper. There is a manual option, which requires the customer to push the hopper on wheels to its desired location. There are powered options, which have two drive assemblies mounted on the hopper on either side of the inlet. The powered drive assemblies are either hydraulic or electric. The electrically powered drive assemblies are the subject of this action.

GLG contends that Brandt's motion for summary judgment focuses only on the 10" and 13" models and ignores the 16" model, which contains a different configuration. The EZSwing Hopper Mover is an option offered on the 10" and 13" models. The 16" model can only be purchased with either the EZSwing Hopper Mover or its hydraulic counterpart. GLG asserts that bracketing is a critical component of the drive assembly mounting and the absence of bracket holes for pins or axles on the 16" model is significant and enough to defeat Brandt's summary judgment motion.

Following a <u>Markman</u> hearing, the court issued its Claim Construction Order on the '131 Patent.[6] The court construed several disputed terms in Claim 1. Claim 1 provides as follows (emphasis added):

> An auger assembly comprising: a main auger; a swing auger connected to the main auger for pivotal swing movement about a generally upstanding axis of the main auger so that the swing auger can swing from a retracted position along side the main auger to an extended position at right angles to the main auger; the hopper having a pair of end walls and a base wall interconnecting the end walls and defining first and second side edges at right angles to the end walls; and a ***drive kit*** for the attachment to the hopper for driving movement of the hopper comprising: a first drive assembly ***arranged for mounting on the base wall adjacent the first side edge of the hopper*** and a second drive assembly ***arranged for mounting on the base wall adjacent the second side edge of the hopper***; each drive assembly including at least one ground wheel and an electric drive motor for

---

[6] Doc. #58.

3

driving said at least one ground wheel about its axis so as to drive movement of the hopper.

In summary, the court construed the term "***drive kit***" to mean first and second drive assemblies for driving movement of the hopper. The court construed the term "***arranged for mounting on the base wall adjacent the first side edge of the hopper***" to mean arranged for mounting on the base wall on the first side edge of the hopper between the end walls. Likewise, the term "***arranged for mounting on the base wall adjacent the second side edge of the hopper***" was construed to mean "arranged for mounting on the base wall on the second side edge of the hopper between the end walls."

## DISCUSSION

Non-infringement and invalidity are alternative grounds for dismissal of a case.[7] "[A]n accused infringer 'may prevail either by successfully attacking the validity of the patent or by successfully defending the charge of infringement.'"[8]

**1.   Motion for Summary Judgment of Non-Infringement**

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact."[9] "Literal infringement exists when every limitation recited in the claim is found in the accused device."[10] Under the doctrine of equivalents, infringement exists when "there is equivalence between the elements of the accused product . . . and the claimed elements of

---

[7] Commil USA, LLC v. Cisco Systems, Inc., ___ U.S. ___, 135 S.Ct. 1920, 1928 (2015) (citing Cardinal Chemical Co. v. Morton Int'l, Inc., 508 U.S. 83 (1993)).

[8] Id. (quoting Deposit Guaranty Nat. Bank v. Roper, 445 U.S. 326, 334 (1980)).

[9] Akzo Nobel Coatings, Inc. v. Dow Chemical Co., 811 F.3d 1334, 1339 (Fed. Cir. 2016).

[10] Id. at 1341 (citing Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996)).

the patented invention."[11] The issue of infringement "is amendable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent."[12]

The determination of infringement requires a two-step analysis: (1) a construction of claim terms to determine a patent's scope and meaning, and (2) a comparison of the construed claims to the accused's device or process.[13] "[T]he patentee must prove that the accused device embodies every limitation in the claim, either literally or by a substantial equivalent."[14]

  *A. Literal Infringement*

Claim 1 in the '131 Patent requires, among other things, two drive assemblies, each of which must be "arranged for mounting on the base wall adjacent the first [or second] side edge of the hopper."[15] Under the court's claim construction, the limitations contained in Claim 1 describe an invention in which the drive assemblies are mounted on the base wall on the first or second side edge of the hopper between the end walls. The Owner's Manuals for Brandt's products and photographs in the record show that the electric drive assemblies on Brandt's EZSwing Hopper Mover are mounted onto the hopper end wall. GLG disputes this evidence, contending the drive assemblies are mounted to the weldment to a bracket welded on the base wall of the hopper located on the base wall. It is the existence of this

---

[11] Duramed Pharm., Inc. v. Paddock Labs, Inc., 644 F.3d 1376, 1380 (Fed. Cir. 2011) (internal quotation marks and citation omitted).

[12] Akzo Nobel Coatings, Inc., 811 F.3d at 1339 (citations omitted).

[13] Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1572 (Fed. Cir. 1994).

[14] Id.

[15] Doc. #1-1, the '131 Patent, col. 4, lines 35-42.

alleged bracket in which GLG contends that Brandt's drive assemblies fall within the literal scope of the claims in the '131 Patent.

Brandt counters that GLG's welded bracket theory is simply incorrect and imaginary, as there is neither a break nor a weld in the end wall. Regardless, it is indisputable that Brandt's drive assemblies are neither mounted on the base wall, nor on the first or second side edge, nor arranged between the end walls. Brandt's products containing the EZSwing Hopper Mover do not literally infringe on Claim 1.

Because Claims 2 and 4-9 depend on Claim 1, all eight claims asserted against Brandt include the same limitations.[16] Because the EZSwing Hopper Mover does not meet the limitations relating to the mounting of the drive assemblies, it does not literally infringe any of the claims in the '131 Patent.[17] GLG Farms has presented insufficient proof to support a reasonable finding that the accused product meets every limitation of the asserted claims in the '131 Patent.

### B. *Doctrine of Equivalents*

GLG asserts that Brandt's products containing the EZSwing Hopper Mover infringe the '131 Patent under the doctrine of equivalents. GLG claims there is nothing in the patent that excludes structures having drive assemblies mounted on the end walls of the hopper. GLG further claims there is no evidence that the mounting arrangement constitutes a substantial difference from the claimed element or fails to meet the function-way-result

---

[16] Ferring B.V. v. Watson Laboratories, Inc.-Florida, 764 F.3d 1401, 1411 (Fed. Cir. 2014) (when asserted independent claims are not infringed, the asserted dependent claims are likewise not infringed).

[17] Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1553 ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed".).

test.

The court construed the '131 Patent to describe an invention that claimed drive assemblies mounted on the base wall on the first or second side edge of the hopper between the end walls. Absent this limitation, the patentability of '131 Patent could be called into question. The patentee identified known prior art (Patent No. 7,191,889 - Heley) that included drive wheels attached to end walls.[18] GLG asserts that the prior art reference is insignificant because the patent specification does not criticize Heley or identify any specific disadvantages of the Heley invention. GLG further asserts that the Heley patent is distinguishable because it contains only a single drive assembly.

The '131 Patent is replete with references to the location of the drive assemblies because it is an essential part of the subject invention. The abstract explains that each drive assembly is mounted approximately midway across the base wall. Figure 2 in the drawings illustrates the drive assemblies located toward the middle of the two opposite inclined sides of the hopper and not attached to either the front or rear of the hopper. In the brief summary of the invention, the drive kit is described as comprising a first drive assembly arranged for mounting on the base wall adjacent the first side edge of the hopper and a second drive assembly arranged for mounting on the base wall adjacent the second side edge of the hopper. The detailed description of the invention informs that in the prior art a pair of front wheels are attached to end walls of the hopper which stand vertically upwardly and close the ends of the hopper. Finally, the location of the drive assemblies is not referred to as a preferred embodiment. Rather, the location of the drive assemblies is

---

[18] Doc. #1-1, the '131 Patent, col. 3, lines 18-19.

an essential part of the invention. The '131 Patent plainly provides that the auger assembly is comprised of a main auger, a swing auger, a hopper, and a drive kit which consists of a first and second drive assembly arranged for mounting on the base wall adjacent the first and second side edge of the hopper.

"A patentee may not write narrow claims for allowance by the PTO and subsequently attempt to broaden the claims in court by using the doctrine of equivalents."[19] The claim limitation regarding the location of the drive assemblies in the '131 Patent cannot be broadened using the doctrine of equivalents to include drive assemblies mounted on the end walls.[20]

The court next turns to GLG's argument that there is no substantial difference from the accused mounting location and the claimed mounting location. "If the claimed and accused elements are recognized by those of skill in the art to be opposing ways of doing something, they are likely not insubstantially different."[21] "[T]he doctrine of equivalents *necessarily* deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim,[22] but it "is not a license to ignore the claim limitations,"[23] and [t]he protection of a patent may not 'embrace a structure that is specifically excluded from the

---

[19] PSC Computer Products, Inc. v. Foxconn Intern., Inc., 355 F.3d 1353, 1357 (Fed. Cir. 2004).

[20] Pozen Inc. v. Par Pharmaceutical, Inc., 696 F.3d 1151, 1170 (Fed. Cir. 2012) (quoting Cohesive Techs, Inc. v. Waters Corp., 543 F.3d 1351, 1372 (Fed. Cir. 2008)).

[21] Brillian Instruments, Inc. v. GuideTech, LLC, 707 F.3d 1342, 1347-48 (Fed. Cir. 2013).

[22] Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1317 (Fed. Cir. 1998) (emphasis in original).

[23] Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 397 (Fed. Cir. 1994).

scope of the claims.'"[24]

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case.[25] The Supreme Court has cautioned that "[i]t is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.[26] In the '131 Patent, the drive assemblies connected to the base wall on the first or second side edge of the hopper tie the location of the drive assemblies to a specific place. By definition, mounting on the hopper can only occur on the end walls or on the base walls. The patentee explicitly recognized prior art mounting the wheels on the end wall and elected to claim an invention that mounts the wheels on the base wall. Brandt's products containing the EZSwing Hopper Mover locate the drive assemblies on the end wall, which is not equivalent to the base wall. While the doctrine of equivalents is a viable alternative to literal infringement, on the facts presented, no reasonable finder of fact could find infringement by equivalents because the differences between the allegedly infringing devices and the claimed invention are not insubstantial.[27]

---

[24] Wiener v. NEC Electronics, Inc., 102 F.3d 534 (Fed. Cir. 1996) (quoting Dolly, Inc., 16 F.3d at 400)).

[25] Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 399 U.S. 605, 609 (1950).

[26] Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997).

[27] See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1319 (Fed. Cir. 1998) (doctrine of equivalence is not applicable where the "connect to said longitudinal slots" limitation ties the lockout to a specific place and the alleged infringing lockout is located at the distal end of the disposable loading unit nowhere near the longitudinal slots that are located in the staple cartridge at the front end of the stapler); Budde v. Harley-Davidson, Inc., Nos. 03-1610 and 03-1641, 2004 WL 2288149, 116 Fed. Appx. 270 (Fed. Cir. 2004) (placement of the fuel injectors on the intake manifold (or on the intake manifold side of the induction module) is not equivalent to the claimed mounting of the injectors in the fuel injector and throttle body. To conclude they are equivalent ignores the principal relationship between the three components recited in the limitation–the "fuel injectors," the "fuel injector and throttle body," and the "intake manifold"– and makes the relational claim language superfluous.)

Lastly, GLG relies on the function-way-result test to show equivalence. It has presented expert opinions based on field testing to demonstrate equivalence. Brandt challenges the expert opinions and field testing on the grounds that GLG analyzed the wrong claim limitations and has analyzed improperly the product as a whole.

The function-way-result test is met by showing on an element-by-element basis that "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patent product."[28] If an accused element meets the function-way-result test, no equivalent is to be found if the scope of the equivalency would capture the prior art.[29]

The function identified by GLG is two independent drive assemblies arranged for mounting on separate sides of the hopper base wall. According to GLG's expert, the way the mountings accomplish the function is to provide two independent electric motors, each driving a tire and placed on either side of the centerline hopper, allowing the weight of the hopper to maintain the load over the tires for ground traction. The results identified by GLG include providing consistent drive throughout the path of the hopper while establishing and maintaining traction.

In order to meet the function-way-result test, GLG must show the Brandt assemblies that are arranged for mounting on the end wall perform substantially the same function as the claimed drive assemblies in substantially the same way to achieve substantially the same result. GLG did not include as a "function" the location of the drive assemblies beyond those arranged for mounting on separate sides of the base wall. GLG contends the location,

---

[28] Crown Packaging Tech, Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1312 (Fed. Cir. 2009).

[29] Intendis GMBH v. Glenmark Pharmaceuticals Inc., USA, 822 F.3d 1355, 1363 (Fed. Cir. 2016).

alone, does not perform a function or achieve a result and, therefore, its analysis is proper.

Tellingly, GLG did not test a product in which the drive assemblies are arranged for mounting on the base walls of the side edges of the hopper between the end walls, which is the subject of the patent-in-suit. GLG contends it does not have to test a product that contains a preferred embodiment.

"Infringement, either literal or by equivalence, is determined by comparing the accused device with the claims in suit, not with a preferred or commercial embodiment of the patentee's claimed invention."[30] While patentees are not necessarily limited to their preferred embodiment, the court must still consult the structure disclosed in the specification.[31] The structure disclosed in the specification of the '131 Patent teaches an invention with drive assemblies arranged for mounting on the base walls between the end walls. The patentee specifically claimed the location of the drive assemblies. GLG's reliance on a product that falls outside the scope of the claimed invention and is not even described as a preferred embodiment is insufficient to defeat summary judgment.

The '131 Patent specifically claimed as part of the invention the arrangement location for the drive assemblies. In an effort to rescue itself from the narrowly drawn patent, GLG attempts to read a claim limitation right out of the patent. It cannot do so. If the court were to follow GLG's approach, it would run afoul of the Supreme Court's cautionary direction that when applying the doctrine of equivalence a court must not allow "such broad play as to effectively eliminate [an] element in its entirety.[32]

---

[30] Martin v. Barber, 755 F.2d 1564, 1567 (Fed. Cir. 1985).

[31] See Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1356 (Fed. Cir. 1999)

[32] Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997).

11

**2.      Motion for Summary Judgment of Invalidity**

Because the court has found the accused products do not infringe on the '131 Patent, the court need not reach the issue of the '131 Patent's validity.[33]  The court dismisses Brandt's motion for summary judgment of invalidity as moot.

## CONCLUSION

Brandt's products containing the EZSwing Hopper Mover do not infringe on the '131 Patent, literally or under the doctrine of equivalence.  Brandt's motion for summary judgment is **GRANTED**.  GLG's motion for summary judgment on Claims 1 and 5 is **DENIED**.  Brandt's motion for summary judgment on invalidity is dismissed as moot.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 29th day of March, 2017.

                                        */s/ Ralph R. Erickson*
                                        Ralph R. Erickson, District Judge
                                        United States District Court

---

[33] TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1156 (Fed. Cir. 2004) (noting that a determination of infringement or non-infringement applies only to a specific accused product or process while invalidity is a defense to infringement for any product).